|  |  |
|---|---|
| United States of America, | CR 09-01733-TUC-JMR(JCG) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Alex Ibarra Torres, | |
| Defendant. | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Pending before the Court are thirteen Motions filed by Defendant Alex Ibarra Torres ("Torres"):

1. Motion in Limine filed on March 11, 2010 (Doc. No. 58);

2. Motion for Preservation and Production of Rough Notes filed on March 11, 2010 (Doc. No. 59);

3. Motion for Production of Giglio and Henthorn Materials filed on March 11, 2010 (Doc. No. 60);

4. Motion for Disclosure of Rule 404(b) Material filed on March 11, 2010 (Doc. No. 61);

5. Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire filed on March 11, 2010 (Doc. No. 62);

6. Motion to Dismiss for Insufficiency of Indictment filed on April 9, 2010 (Doc. No. 72);[1]

---

[1] Torres also filed a Motion to Dismiss for Insufficiency of Indictment on April 5, 2010 (Doc. No. 68) which appears to be identical to the Motion to Dismiss for Insufficiency of Indictment

| | |
|---|---|
| 1 | 7.     Motion for Bill of Particulars filed on April 5, 2010 (Doc. No. 69); |
| 2 | 8.     Motion to Dismiss for Lack of Jurisdiction filed on April 7, 2010 (Doc. No. 70); |

7. Motion for Bill of Particulars filed on April 5, 2010 (Doc. No. 69);

8. Motion to Dismiss for Lack of Jurisdiction filed on April 7, 2010 (Doc. No. 70);

9. Motion to Dismiss Indictment for Vagueness filed on April 7, 2010 (Doc. No. 71);

10. Motion to Dismiss for Failure to State Elements filed on April 10, 2010 (Doc. No. 73);

11. Motion to Sever Counts filed on April 10, 2010 (Doc. No. 74);

12. Motion to Disclose and Produce Confidential Informant filed on April 13, 2010 (Doc. No. 75); and

13. Motion to Suppress Statements for Lack of Corroboration filed on April 29, 2010 (Doc. No. 88).

Co-defendant John G. Ibarra ("Ibarra") filed a joiner in several of the motions.

These matters came before the Court for a hearing and a report and recommendation as a result of a referral made on August 21, 2009, pursuant to LRCrim 5.1. (Doc. No. 12.) Defendant's Motions were set for hearing which was held on June 11, 2010. Defendants Torres and Ibarra, who are not in custody, were present and represented by counsel. These matters were submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny as moot Torres' Motion in Limine, Motion for Preservation and Production of Rough Notes, Motion for Production of Giglio and Henthorn Materials, and Motion for Disclosure of Rule 404(b) Material. The Magistrate Judge recommends that the District Court rule in the first instance on the Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire. At the hearing, Torres withdrew his Motion to Disclose and Produce Confidential Informant. The Magistrate Judge further recommends that the District Court deny: the Motion to Dismiss for Insufficiency of Indictment; Motion for bill of Particulars; Motion to Dismiss for Lack of Jurisdiction; Motion to Dismiss Indictment for Vagueness; Motion to Dismiss for Failure to State

---

filed on April 9, 2010.

Elements; Motion to Sever Counts; and Motion to Suppress Statements for Lack of Corroboration.

**Background**

On March 9, 2009, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents received information that Defendant Ibarra had purchased several handguns in multiple sales transactions involving more than one handgun at a time. ATF agents discovered that between August 9, 2008 and March 12, 2009, Ibarra had purchased a total of 25 handguns. For each transaction, Ibarra completed the required paperwork, Form 4473, and represented on that Form that he was purchasing the firearms for himself and not on behalf of another.

On April 28, 2009, ATF agents interviewed Ibarra, who admitted to buying the handguns for his cousin, Defendant Torres. Ibarra stated that Torres was prohibited from purchasing firearms, and so paid Ibarra $100 per gun. According to Ibarra, he would pick up money from Torres and receive instructions from Torres regarding what type of firearms to purchase, then purchase the firearms and take them directly to Torres. Ibarra admitted to purchasing between 22 and 32 handguns on Torres' behalf. Ibarra told the agents that Torres was providing the guns to a "guy." Agents interviewed Ibarra again on April 30, 2009, at which time Ibarra made consistent statements regarding his purchase of the firearms. Ibarra also told agents on April 30, 2009 that he had called Torres on April 28, 2009 to let him know that Ibarra had been interviewed by ATF agents.

ATF agents interviewed Torres on April 30, 2009. Torres admitted that he told Ibarra to buy pistols of Torres' behalf in order for Torres to sell to the firearms to a man named "Manuel." Torres told the agents that he took gun orders from Manuel, then called Ibarra and told Ibarra which guns to purchase. Torres stated he could not purchase the guns himself because he was prohibited. Torres stated that he received money from Manuel, gave it to Ibarra for the purchase of firearms, then received the firearms from Ibarra and sold them to Manuel for $300 over the retail price. Torres also stated that he paid Ibarra between $100

and $150 for purchasing each firearm. Agents interviewed Torres again on May 14, 2009. Torres made additional statements consistent with those he had made on April 30, 2009.

On August 12, 2009, Torres and Ibarra were indicted on 21 counts of making a false statement during the purchase of a firearm in violation of 18 U.S.C. § 924(a)(1)(A) and (2)(a), and one count of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and 924(a)(1)(D).

Torres moved to suppress his statements. The Motion was denied. (Doc. 56.) On May 6, 2010, the Court granted Torres' Motion to Sever and severed the trials of Torres and Ibarra. (Doc. No. 98.)

## Analysis

**A. Motion in Limine, Motion for Preservation and Production of Rough Notes, Motion for Production of *Giglio* and *Henthorn* Materials, Motion for Disclosure of Rule 404(b) Material and Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire[2]**

At the hearing, counsel for Torres indicated that his Motion in Limine should have been captioned as a Notice as it was meant to inform the government of potential challenges the Defendant anticipates making with respect to the introduction into evidence of certain electronic records. Thus, this Motion is moot as it does not present issues to the Court for determination.

With respect to the Motion for Preservation and Production of Rough Notes, the government has stated that the agents' rough notes do not exist and as such cannot be preserved and/or produced. Counsel for Torres' agreed that the Motion was therefore moot.

Defense counsel and the government agreed at the hearing that Torres' Motion for Production of *Giglio* and *Henthorn* Materials is moot because the government is aware of and has indicated it will comply with its *Giglio* and *Henthorn* obligations.

Torres' Motion for Disclosure of Rule 404(b) Material is moot as the government indicated at hearing that it is not in possession of any Rule 404(b) material.

---

[2]The government did not file responses to the motions. Ibarra joined in the motions. (Doc. No. 76.)

Finally, with respect to Torres' Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire, Torres' counsel did not state at this time any specific questions that he intends to ask the jury panel. The Magistrate Judge recommends that a ruling on Torres' Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire be deferred and determined by the District Court as that Court will conduct the trial and jury selection.

**B.    Motion to Dismiss for Insufficiency of Indictment**

On April 9, 2010, Torres filed a Motion to Dismiss for Insufficiency of Indictment seeking to dismiss the indictment on the ground that it fails to allege culpable acts by Torres. (Doc. No. 72.) The government filed a response and Torres timely replied. (Doc. Nos. 80, 93.) Ibarra joined in the Motion. (Doc. No. 79.)

"[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Fed. R. Crim. P. 7(c)(1) requires the indictment to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it (1) clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962). Two corollary purposes of an indictment are: (1) to ensure that the defendant is being prosecuted on the basis of the facts presented to the grand jury, and (2) to allow the court to determine the sufficiency of the indictment. *See United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982).

**1.    Counts 1-21**

It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. *See Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation omitted). The language of the statute may be used in the general description of an offense, but it must be

accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged. *See id.* at 117-18. In the present case, Counts 1-21 of the indictment charge Ibarra with falsely representing that he was the actual buyer of a firearm on 21 separate occasions, each identified by date, location and type of firearm purchased. With respect to Torres, the indictment states that Torres "aided, abetted, counseled, commanded, induced and procured such representation." It is undisputed that the indictment fully alleges the elements of making a false statement during the purchase of a firearm as well as the elements of aiding and abetting.[3] The parties dispute, however, whether the government is also required to allege specific facts relating to Torres' involvement in Ibarra's purchases. Torres contends that the indictment is specific as to Ibarra, but fails to allege what Torres said or did that qualifies as aiding and abetting. The government argues that the indictment is sufficient because it alleges that Torres "aided, abetted, counseled, commanded, induced and procured such representation" on each of the dates and at each of the locations identified for each of the weapons.

The Magistrate Judge concludes that the indictment is sufficient as to Torres. The indictment alleges that Torres induced or counseled Ibarra to make false statements during the purchase of 24 different firearms on 21 specific dates at 21 specific locations. There is no requirement that the government plead with specificity what Torres said or did before each purchase to encourage Ibarra to make the false statements. A defendant "aids and abets" in the commission of an offense if the defendant "participate[s] in it as in something that he wishes to bring about," and "seek[s] by his action to make it succeed." *United States*

---

[3] A defendant makes a false statement during the purchase of a firearm if he: (1) knowingly makes a false statement; (2) pertaining to information that the law requires a Federal Firearms Licensee to keep; (3) during the purchase of a firearm. See 18 U.S.C. § 924(a)(1)(A). The elements of aiding and abetting are: (1) the crime charged was committed by someone; (2) the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of the crime charged; and (3) the defendant acted before the crime was completed. See 18 U.S.C. § 2(a).

- 6 -

*v. Campbell*, 702 F.2d 262, 265 (D.C. Cir. 1983) (citing *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)). An aider and abettor "need not perform the substantive offense, ... need not know its details, ... and need not even be present." *Id*. (citation omitted). 18 U.S.C. § 2(a) does not require a specific identification of fact as to the act that constitutes aiding and abetting.

Ibarra joined in the Motion to Dismiss for Insufficiency of Indictment as to Counts 1-21. As noted above, the indictment adequately alleges specific details related to Ibarra's false statements during purchase of 21 firearms.

### 2. Count 22

Torres also argues that the indictment is insufficient with respect to Count 22. In order to convict Torres for violating 18 U.S.C. § 922(a)(1)(A), the government must prove that Torres willfully engaged in the business of dealing in firearms without a license. A "dealer" is defined as "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11). The term "engaged in the business" means "a person who devotes time, attention and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit ... but such term shall not include a person who makes occasional sales ... for the enhancement of a personal collection or for a hobby." 18 U.S.C. § 921(a)(21)(C-D).

The indictment satisfies the requirement that it clearly inform the defendant of the precise offense of which he is accused: it alleges that Torres and Ibarra willfully engaged in the business of dealing firearms without a license. The parties disagree, however, as to whether the indictment is specific enough for Defendants to prepare their defenses and/or plead an acquittal or conviction in bar of future prosecutions for the same offense. The government contends that the indictment is sufficient because it alleges all of the elements of the offense as well as the specific dates of the offense. According to the government, the business of dealing in firearms is an on-going offense that need not be defined by specific gun sales and is properly identified by general reference to sales made over a period in time. Torres argues, however, that the government should be required to plead with specificity

1 which sales within the given date range are attributable to the alleged business of dealing
2 firearms. Without this information, Torres contends, Torres cannot adequately prepare his
3 defense or determine whether he is being subject to double jeopardy.

4     A plain reading of the indictment indicates that Torres is being charged with willfully
5 engaging in the business of dealing firearms without a license from August 1, 2008 through
6 March 31, 2009. These allegations are sufficient to put Torres on notice that any gun sales
7 he made (or aided and abetted) during this time are potentially included in the charge. The
8 allegations are also sufficient to protect Torres from double jeopardy – to use Torres'
9 example at the hearing, if he were indicted tomorrow on charges of unauthorized firearms
10 dealing for some period within or overlapping with August 1, 2008 through March 31, 2009,
11 he could argue that he has already been charged for firearms deals occurring within that date
12 range.

13     Accordingly, the Magistrate Judge recommends that Torres' Motion to Dismiss for
14 Insufficiency of Indictment, in which Ibarra has joined, be denied. (Doc. No. 72.)

15 **C.**     **Motion for Bill of Particulars**

16     On April 5, 2010, Torres filed a Motion for Bill of Particulars, arguing that in the
17 event his Motion to Dismiss for Insufficiency of Indictment was denied, the Court should
18 direct the government to file a bill of particulars. (Doc. No. 69.) The government filed a
19 response and Torres timely replied. (Doc. Nos. 81, 89.) Ibarra joined in the Motion. (Doc.
20 No. 79.)

21     Rule 7(f), Fed. R. Crim. P., authorizes the Court to direct the government to file a bill
22 of particulars. The bill of particulars has three functions: "to inform the defendant of the
23 nature of the charge against him with sufficient precision to enable him to prepare for trial,
24 to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his
25 acquittal or conviction in bar of another prosecution for the same offense when the
26 indictment itself is too vague, and indefinite for such purposes." *United States v. Giese*, 597
27 F.2d 1170, 1180 (9th Cir. 1979) (citing *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.
28 1976)). As concluded in Section B, above, the indictment in this case is not too vague or

- 8 -

indefinite. In addition, the government avows to the Court that it has disclosed to Torres all of the reports, documents and other evidence related to Torres' offenses which the government intends to introduce at trial. Full discovery obviates the need for a bill of particulars. *See id.* Because Torres is in possession of all the evidence which the government intends to produce at trial, he is able to prepare for trial and avoid or minimize the danger of surprise at the time of trial. *See id.* (noting that defendant's request for the "when, where, and how" of every act in furtherance of the conspiracy was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars, and that a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case.) Accordingly, a bill of particulars is not necessary.

The Magistrate Judge recommends that Torres' Motion for Bill of Particulars (Doc. No. 69), in which Ibarra has joined, be denied.

### D.     Motion to Dismiss for Lack of Jurisdiction

On April 7, 2010, Torres filed a Motion to Dismiss for Lack of Jurisdiction, arguing that 18 U.S.C. § 924(a)(1)(A) is unconstitutional. (Doc. No. 70.) Torres contends that because 18 U.S.C. § 924(a)(1)(A) does not require any effect on interstate commerce, it is an unconstitutional enactment exceeding Congress' Commerce Clause power. The government filed a response and Torres timely replied. (Doc. Nos. 82, 90.) Ibarra joined in the Motion. (Doc. No. 76.)

Commerce Clause jurisprudence identifies three broad categories of activity that Congress may regulate under its commerce power: (1) Congress may regulate the use of the channels of interstate commerce; (2) Congress is empowered to regulate and protect the instrumentalities of interstate commerce, and (3) Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce. *See United States v. Morrison*, 529 U.S. 598, 609 (2000) (citations omitted). Of these categories, the third applies in the instant case.

18 U.S.C. § 924(a)(1)(A) prohibits the making of a false statement during the purchase of a firearm. The statute on its face regulates commerce and economic activity - specifically the purchase of guns and ammunition. 18 U.S.C. § 924(a)(1)(A) makes it unlawful to "knowingly make[] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . ." Persons who are required to be licensed under this chapter include: any person "engag[ing] in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition." 18 U.S.C. § 923(a). The Supreme Court has upheld "a wide variety of congressional Acts regulating intrastate economic activity where [it has] concluded that the activity substantially affected interstate commerce." *Morrison*, 529 U.S. at 610 (collecting cases). Both the United States Supreme Court and the Ninth Circuit have held that statutes prohibiting false statements during the purchase of firearms are within Congress' Commerce Clause authority because even wholly intrastate firearms transactions necessarily affect interstate commerce. *See Huddleston v. United States*, 415 U.S. 814, 833 (1974); *United States v. Andrino*, 497 F.2d 1103, 1105-06 (9th Cir. 1974); and *United States v. Menna*, 451 F.2d 982, 984 (9th Cir. 1971).

Torres contends, however, that *Huddleston*, *Andrino,* and *Menna* have been implicitly overruled by what Torres refers to as "the *Lopez* Trilogy" - three cases decided by the Supreme Court in 1995 and 2000 that examine the scope of Congress' Commerce Clause power: *United States v. Lopez,* 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); and *Jones v. United States*, 529 U.S. 848 (2000). These cases are distinguishable. In each, the Court found that the regulated activity bore no substantial relation to interstate commerce.

*Lopez* involved the Gun-Free School Zones Act, which made it a federal crime to knowingly possess a firearm in a school zone. The Supreme Court found the statute was beyond Congress' power because: (1) the statute by its terms had nothing to do with commerce or any sort of economic enterprise, 514 U.S. at 559-561; (2) the statute contained no element which might limit its reach to a discrete set of firearm possessions that had an

- 10 -

explicit connection with or effect on interstate commerce, 514 U.S. at 562; and (3) neither the statute nor its legislative history contained congressional findings regarding the effects upon interstate commerce of gun possession in a school zone. 514 U.S. at 561. Similarly, in *Morrison*, the Supreme Court held that Congress lacked the Congressional authority to enact a statute providing a federal civil remedy for the victims of gender-motivated violence because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 529 U.S. at 613. The Court noted that Congressional findings that support a "but for" causal chain of attenuated effect upon interstate commerce are simply insufficient and if accepted, would allow Congress to regulate any crime. 529 U.S. at 615. Finally, in *Jones*, the Court held that a statute which makes it a federal crime to "maliciously damag[e] or destro[y], . . .by means of fire or an explosive, any building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," did not reach the arson of an owner-occupied private residence which was not used in any commercial purpose. 529 U.S. at 850-51. In sum, the Court concluded that in each of these three cases, the regulated activity bore no substantial nexus to commerce.

In contrast, courts have found, both prior to and subsequent to the *Lopez, Morrison* and *Jones* decisions, that firearms transactions are an economic activity that substantially affect interstate commerce. As noted above, the Supreme Court and the Ninth Circuit made such a finding in *Huddleston*, *Andrino,* and *Menna.* Subsequent to *Lopez,* in *United States v. Haney*, 264 F.3d 1161, 1168 (10th Cir. 2001), the Tenth Circuit concluded: "Congress has found that 'firearms and ammunition move easily in interstate commerce,' and has therefore taken numerous steps to regulate these transactions." *Haney*, 264 F.3d at 1168 (citing § 922(q)(1)(C)). Similarly, in *United States v. Peters*, 403 F.3d 1263, 1274 (11th Cir. 2005), the Eleventh Circuit found that the sale of firearms to felons is an economic activity that directly and substantially affects interstate commerce. According to the court, "The sale of a firearm undoubtedly 'is commerce' in its truest form, and the national nature of the market for firearms ensures that this commerce concerns all states, and that its relation to the national interest could hardly be more real or substantial." *Id.*

For the foregoing reasons, the Magistrate Judge concludes that 18 U.S.C. § 924(a)(1)(A) does not fall within the ambit of *Lopez* and its progeny such that *Huddleston*, *Menna* and *Andrino* are no longer good law.

Torres also challenges Congress' ability to prohibit dealing in firearms pursuant to 18 U.S.C. 922(a)(1)(A) where the government fails to allege that such activity affected interstate commerce in any way or that the firearms were in interstate commerce. The offense prohibited in 922(a)(1)(A) pertains specifically to an economic activity - dealing in firearms. Accordingly, and for the additional reasons set forth in this section regarding Congress' power to regulate firearms transactions as Interstate Commerce, the Magistrate Judge rejects Torres' assertion that the federal government is without jurisdiction to prosecute the alleged violations of 18 U.S.C. § 922(a)(1)(A).

Therefore, the Magistrate Judge recommends that Torres' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 70), in which Ibarra has joined, be denied.

### E. Motion to Dismiss Indictment for Vagueness

On April 7, 2010, Torres filed a Motion to Dismiss Indictment for Vagueness, seeking dismissal on the ground that 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 921(a)(21)(C) are unconstitutionally vague.[4] (Doc. No. 71.) The government filed a response and Torres timely replied. (Doc. Nos. 83, 95.) Ibarra joined in the Motion. (Doc. No. 76.)

Generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, the more

---

[4] Torres also argues for the first time in his reply that the statute charged in Count 22 is unconstitutionally vague because it is not clear whether it requires an interstate nexus. Because this argument was raised for the first time in Torres' reply brief, the Court declines to consider it. In addition, the Court has rejected Torres' Commerce Clause arguments in its analysis of Torres' Motion to Dismiss for Lack of Jurisdiction, discussed in Section D herein.

important aspect of vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement." *Id.* (citations omitted).

### 1. 18 U.S.C. § 924(a)(1)(A)

18 U.S.C. § 924(a)(1)(A) provides that anyone who "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . shall be fined under this title, imprisoned not more than five years, or both." Torres contends that the statute is unconstitutionally vague because it cannot be determined from the language of the statute what information is required to be kept in the records of a licensed firearms dealer and in particular, information as to whether the purchaser of the firearm intends to sell or transfer the firearm to someone else. However, 18 U.S.C. § 923(g) specifically provides that "each licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." The Attorney General has promulgated regulations which require firearms purchasers to complete Form 4473 prior to the purchase of a firearm. *See* 27 C.F.R. § 478.124(a).

Form 4473, created by the Bureau of Alcohol, Tobacco and Firearms, specifically asks the firearm purchaser: "Are you the actual buyer of the firearm(s) listed on the form?" *See* Form 4473, available at http://www.atf.gov/applications/e4473/download.html. The form goes on to state, in bold print: "**Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.** (See Important Notice 1 for actual buyer definition and examples.)." *Id.* The Important Notices attached to Form 4473 state at paragraph 1:

> For purposes of this form, you are the actual buyer if you are purchasing this firearm for yourself or otherwise acquiring the firearms for yourself (for example, redeeming the firearm from pawn/retrieving it from consignment). You are also the actual buyer if you are acquiring the firearm as a legitimate gift for a third party. Actual Buyer Examples: Mr. Smith asks Mr. Jones to

> purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is NOT the actual buyer and must answer "no" to question 12a."

Accordingly, the Magistrate Judge concludes that 18 U.S.C. § 924(a)(1)(A) is part of a readily understandable statutory and regulatory scheme that places firearms purchasers on notice that they are required to accurately report whether they are purchasing the firearm for someone else. Particularly when confronted with Form 4473, an ordinary person can understand what conduct is prohibited by 18 U.S.C. § 924(a)(1)(A). In addition, there is nothing within the language of 18 U.S.C. § 924(a)(1)(A) that encourages arbitrary and discriminatory enforcement of the prohibition against false statements during the purchase of a firearm.

### 2. 18 U.S.C. § 921(a)(21)(C)

18 U.S.C. § 922(a)(1)(A) makes it unlawful for anyone other than a "licensed dealer" to engage in the business of dealing in firearms. The term "dealer" includes "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 922(a)(1)(A). The term "engaged in the business"is defined at 18 U.S.C. § 921(a)(21)(C) as:

> [A] person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

Torres contends that 18 U.S.C. § 921(a)(21)(C) is unconstitutionally vague because the word "occasion" does not have any hard numbers or objective criteria attached. He further contends that the statutory line between the occasional firearm sales of a hobbyist and the regular sales of a full-fledged dealer is a blurry, subjective one. At the hearing, Ibarra argued that 18 U.S.C. § 921(a)(21)(C) is unconstitutionally vague because it was unclear who qualified as a "hobbyist" within the meaning of the statute.

The use of the words "occasional" and "hobby" must be read in conjunction with the rest of the statutory provision: an ordinary person reading 18 U.S.C. § 921(a)(21)(C) would

be able to determine whether they were (A) a person who devotes time, attention, and labor to dealing in firearms as their business in order to make a profit through repetitive purchases and resale, or (B) a person who collects guns as a hobby, and occasionally trades or sells one. *See United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009) (rejecting vagueness argument where challenged language "potentially subjects a wide swath of conduct" but is "not open to wholly subjective interpretation.")

Accordingly, the Magistrate Judge recommends that Torres' Motion to Dismiss Indictment for Vagueness (Doc. No. 71), in which Ibarra has joined, be denied.

**F.   Motion to Dismiss for Failure to State Elements**

On April 10, 2010, Torres filed a Motion to Dismiss for Failure to State Elements, arguing that the Defendants' alleged conduct does not fall within the charged statutes. (Doc. No. 73.) The government filed a response and Torres timely replied. (Doc. Nos. 84, 91.) Ibarra joined in the Motion. (Doc. No. 76.)

In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating. *United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987) (citing *McNally v. United States*, 483 U.S. 350, ---- (1987)). Torres contends that the indictment fails to allege acts sufficient to constitute violations of 18 U.S.C. § 924(a)(1)(A) or 18 U.S.C. § 922(a)(1)(A).

**1.   18 U.S.C. § 924(a)(1)(A)**

18 U.S.C. § 924(a)(1)(A) prohibits a defendant from "knowingly mak[ing] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." Torres contends that the indictment fails to allege that Ibarra falsified information required by 18 U.S.C. § 924(a)(1)(A) because it charges him with falsely representing that he was the actual transferee/buyer of a firearm. According to Torres, 18 U.S.C. § 924(a)(1)(A) does not require licensed firearm dealers to keep records certifying that the purchaser is buying the gun for himself and not for someone else. However, for the reasons stated in Section E.1, above, 18 U.S.C. § 924(a)(1)(A), when read in conjunction with the regulations and forms authorized by 18 U.S.C. § 923(g), does

require firearms dealers to confirm the identity of the intended purchaser. The Indictment alleges that Torres procured and induced Ibarra to falsely state that he was the actual buyer of the guns at issue. Accordingly, if the government proves the acts alleged in the indictment, those acts would constitute a violation of 18 U.S.C. § 924(a)(1)(A).

**2. 18 U.S.C. § 922(a)(1)(A)**

18 U.S.C. § 922(a)(1)(A) provides:

(a) It shall be unlawful--
   (1) for any person--
      (A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

Torres alleges that the indictment fails to allege that he violated 18 U.S.C. § 922(a)(1)(A) because it does not allege that the firearms at issue traveled through interstate commerce. Contrary to Torres' assertion, an effect on interstate commerce is not an essential element of the offense. A plain reading of 18 U.S.C. § 922(a)(1)(A) shows that the statute may be violated by: (1) engaging in the business of dealing in firearms; (2) without a license. *See* Ninth Circuit Manual of Model Jury Instructions, Criminal, 8.45; s*ee also United States v. Hornbeck*, 489 F.2d 1325 (2d Cir. 1973) (section 922(a)(1) applies to intrastate as well as interstate firearm activities, thus proof of interstate nexus unnecessary for conviction). In the alternative, a defendant may also violate 18 U.S.C. § 922(a)(1)(A) by: (1) in the course of dealing firearms; (2) shipping firearms in interstate commerce. There is no requirement, however, that an interstate commerce nexus be alleged with specificity in the indictment. In addition, for the reasons stated in Section D, above, an interstate commerce nexus is implicit in statutes regulating the sale of firearms, because firearms transactions are an economic activity that substantially affect interstate commerce.

Accordingly, the Magistrate Judge recommends that Torres' Motion to Dismiss for Failure to State Elements (Doc. No. 73), in which Ibarra has joined, be denied.

1  **G.     Motion to Sever Counts**

2       On April 10, 2010, Torres filed a Motion to Sever Counts, seeking to sever the counts
3  alleged against him on the ground that they are based on independent acts or transactions
4  with different facts. (Doc. No. 74.) The government filed a response to the Motion, and
5  Torres timely replied. (Doc. Nos. 85, 94.) Ibarra joined in the Motion. (Doc. No. 79.)

6       Rule 8(a), Fed. R. Crim. P., permits the joinder of separate counts if the offenses
7  charged are "of the same or similar character, or are based on the same act or transaction, or
8  are connected with or constitute parts of a common scheme or plan."[5] Joinder is the rule
9  rather than the exception. *See United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).
10 Pursuant to Rule 14(a), Fed. R. Crim. P., "if the joinder of offenses ... for trial appears to
11 prejudice a defendant or the government, the court may order separate trials of counts."

12      Torres concedes that Counts 1-21 are "of the same or similar character" such that they
13 may be properly joined for trial. Torres contends, however, that Counts 1-21 should be
14 severed from Count 22 because joinder of the offenses would prejudice him at trial.
15 According to Torres, he may wish to offer a different defense for Counts 1-21 then the
16 defense offered for Count 22, and it will not be credible to offer separate defenses within the
17 same trial. Torres cites no authority for his argument that a desire to offer different defenses
18 for different offenses is a proper basis for severance. The facts giving rise to Counts 1-21
19 are the same facts which give rise to Count 22. Torres' involvement in Ibarra's firearms
20 purchases (Counts 1-21) is "connected with" or part of the same "common scheme or plan"
21 as Torres' sale of those firearms (Count 22). The evidence supporting Counts 1-21 is the
22 same evidence as that which supports Count 22. In addition, Torres' entire confession is
23 potentially admissible as to each count, regardless of severance. Torres has failed to
24 overcome the presumption that joinder applies.

25

26      [5] Torres' Motion to Sever Counts was fully briefed before the Court issued its Order severing
27 the trials of Torres and Ibarra. Consequently, the briefs discuss the applicability of Rule 8(b), Fed.
   R. Crim. P., which governs joinder in cases involving multiple counts and multiple defendants. In
28 light of the severance of Torres' and Ibarra's trials, Fed. R. Crim. P. Rule 8(a) now applies.

1 Accordingly, the Magistrate Judge recommends that Torres' Motion to Sever Counts (Doc. No. 74), in which Ibarra joined, be denied.

### H. Motion to Disclose and Produce Confidential Informant

On April 13, 2010, Torres filed a Motion to Disclose and Produce Confidential Informant, seeking disclosure of the identity of the person who provided information to the government in this matter. (Doc. No. 75.) The government filed a response and Torres timely replied. (Doc. Nos. 87, 92.) Ibarra joined in the Motion. (Doc. No. 76.) At the hearing, Torres and Ibarra withdrew the Motion.

### I. Motion to Suppress Statements for Lack of Corroboration

On April 29, 2010, Torres filed a Motion to Suppress Statements, contending that his statements lack any corroboration beyond Torres' own confession. (Doc. No. 88.) The government filed a response to the Motion and Torres timely replied. (Doc. Nos. 96, 97.) Ibarra did not join in this Motion.

"It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963). "Admissions, postfactum, of the elements of the crime with which the defendant is charged must be corroborated by substantial independent evidence which would tend to establish the trustworthiness of the statements." *United States v. Garcia-Villegas*, 575 F.3d 949, 950 (9th Cir. 2009) (citing *Opper v. United States*, 348 U.S. 84, 93 (1954)). The law requires more evidence of the *corpus delicti* than the extrajudicial admission of the person charged with its commission. *Id.* at 951. Evidence corroborating a confession need not independently establish each element of the crime charged, but must "fortify" or "bolster" the truth of the confession. *Smith v. United States*, 348 U.S. 147, 156 (1954).

In the present case, Torres was charged in Counts 1-21 with aiding and abetting Ibarra's false statements made during the purchase of a firearm. He was also charged in Count 22 with selling firearms without a license. Torres confessed to agents that he told Ibarra to buy firearms on Torres' behalf in order for Torres to sell those firearms to a man

named "Manuel." Torres also told the agents that he took gun orders from Manuel, then called Ibarra and told Ibarra which guns to purchase. Torres stated he could not purchase the guns himself because he was prohibited. Torres stated that he received money from Manuel, gave it to Ibarra for the purchase of firearms, then received the firearms from Ibarra and sold them to Manuel for $300 over the retail price. Torres also stated that he paid Ibarra between $100 and $150 for purchasing each firearm. This testimony, if proven, would demonstrate that Torres aided and abetted Ibarra's decision to check "yes" in response to the question "are you the actual buyer of the firearm(s) listed on the form?" when completing Form 4473 during the purchase of the firearms at issue in this case. It would also demonstrate that Torres engaged in the business of selling firearms to "Manuel" without a license. Torres therefore contends that his confession is the only evidence supporting convictions under Counts 1-21 or Count 22.

Torres' confession, however, is bolstered by other evidence. First, co-defendant Ibarra may testify at Torres' trial that: Torres was prohibited from purchasing firearms, and so paid Ibarra $100 per gun; he would pick up money from Torres and receive instructions from Torres regarding what type of firearms to purchase, then purchase the firearms and take them directly to Torres; he purchased between 22 and 32 handguns on Torres' behalf, and Torres was providing the guns to a "guy." Even if Ibarra does not or cannot testify at Torres' trial, other evidence also fortifies Torres' confession. A Form 4473 for each of the twenty-five firearms purchased on twenty-one occasions documents each of the charged offenses. Neither Defendant was able to produce the firearms purchased by Ibarra, a fact which corroborates Torres' statements that he sold the firearms to Manuel. Finally, Torres' reported income for the time period at issue was significantly less than the $14,612 that Ibarra spent on firearms, a fact which supports Torres' testimony that Manuel gave him the money for the firearms in advance. This independent evidence tends to establish the trustworthiness of Torres' confession such that a conviction would not be supported by the confession alone.

Accordingly, the Magistrate Judge recommends that Motion to Suppress (Doc. No. 88) be denied.

**Recommendation**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court:

1. DENY AS MOOT the Motion in Limine (Doc. No. 58) filed on March 11, 2010 (Doc. No. 58);

2. DENY AS MOOT the Motion for Preservation and Production of Rough Notes filed on March 11, 2010 (Doc. No. 59);

3. DENY AS MOOT the Motion for Production of Giglio and Henthorn Materials filed on March 11, 2010 (Doc. No. 60);

4. DENY AS MOOT the Motion for Disclosure of Rule 404(b) Material filed on March 11, 2010 (Doc. No. 61);

5. CONSIDER AND DETERMINE the Motion to Allow Defendant to Conduct Voir Dire Beyond Court's Standard Voir Dire filed on March 11, 2010 (Doc. No. 62);

6. DENY the Motion to Dismiss for Insufficiency of Indictment filed on April 9, 2010 (Docs. Nos. 68 & 72);

7. DENY the Motion for Bill of Particulars filed on April 5, 2010 (Doc. No. 69);

8. DENY the Motion to Dismiss for Lack of Jurisdiction filed on April 7, 2010 (Doc. No. 70);

9. DENY the Motion to Dismiss Indictment for Vagueness filed on April 7, 2010 (Doc. No. 71);

10. DENY the Motion to Dismiss for Failure to State Elements filed on April 10, 2010 (Doc. No. 73);

11. DENY the Motion to Sever Counts filed on April 10, 2010 (Doc. No. 74);

12. TAKE NO ACTION with respect to the Motion to Disclose and Produce Confidential Informant filed on April 13, 2010 (Doc. No. 75), as the Motion was withdrawn; and

13. DENY the Motion to Suppress Statements for Lack of Corroboration filed on April 29, 2010 (Doc. No. 88).

The parties have fourteen (14) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 09-1733-TUC-JMR**.

DATED this 21st day of June, 2010.

Jennifer C. Guerin
United States Magistrate Judge